O'Rourke *v.* Walker.

---

JAMES O'ROURKE, P. P. A. *vs.* JULIA B. WALKER.

Third Judicial District, New Haven, January Term, 1925.
WHEELER, C. J., BEACH, CURTIS, KEELER and HAINES, Js.

School authorities—or, if they do not act, the teachers—may make reasonable rules concerning any conduct of the pupils which directly relates to and affects the management of the school and its efficiency; and they may enforce their regulations by the infliction of reasonable corporal punishment.
There was no merit to the plaintiff's claim in the present case that

O'Rourke *v.* Walker.

merely because his offense of assaulting small girls returning from school was committed after he had reached his own house, he was therefore immune from corporal punishment by the defendant, his teacher, since her punitive jurisdiction was not limited by the time or place of the offense, but solely by its tendency to affect the good order and discipline of the institution.

The fact that the pupils assaulted by the plaintiff were in the act of returning from school characterized his conduct as detrimental to proper school discipline.

The plaintiff's claim that the assault was committed in the course of carrying out his mother's directions to eject the girls as trespassers upon her property, even if substantiated by the record, would not excuse his conduct.

Argued January 22d—decided March 6th, 1925.

ACTION to recover damages for personal injuries alleged to have resulted from an assault and battery committed by the defendant, brought to and tried by the Court of Common Pleas in Fairfield County, *Ives, Acting Judge;* facts found and judgment rendered for the defendant, and appeal by the plaintiff. *No error.*

The plaintiff, by his mother and next friend, sues defendant for a battery. The trial court found that defendant was principal of the school which plaintiff attended and the defendant as the principal of the school was authorized by the rules of the school board of the town to lawfully inflict on any pupil in the school, corporal punishment for misconduct in connection with the regulation of the school. On or about September 19th, 1923, the defendant received a complaint at the school from the mother of two small girl pupils that they had been frequently abused by the plaintiff and two other boys while on their way home from school, after school hours. On the following day the defendant received a note from the same mother, after making complaint at the school, that on her way home she had witnessed the same boys annoying two

small girls passing in the same locality as before. These girls were pupils of the school. The locality referred to was upon the premises of the plaintiff's mother. On September 20th, 1923, the defendant summoned the plaintiff and the other two boys to her office in the school and told them of the offenses charged against them. The plaintiff and the other two boys admitted their guilt, whereupon the defendant administered a light corporal punishment in a moderate manner, striking the plaintiff eight times on each hand with a flat stick two feet long and over one half inch thick, used in the school for that purpose only. The punishment was not excessive and no injury was caused by the punishment. The plaintiff failed to prove more than nominal damages even if the punishment had not been justified. The memorandum of decision was made part of the finding.

The court reached the following conclusions: "(1) That the conduct of the plaintiff had a tendency to demoralize the other pupils of the school and to interfere with the proper conduct of the same; (2) that the acts of the plaintiff were detrimental to the good order and best interests of the school; (3) that the defendant, as the principal of said school, in the absence of rules established by the school board or other proper authority, had a right to make and enforce all necessary and proper rules for the regulation of the school and pupils during school hours and afterwards; (4) that said punishment administered by the defendant was reasonable and proper."

The appellant made the following claims of law, which were overruled: "(1) That the punishment administered by the defendant was unreasonable and excessive; (2) that the defendant had no legal right to administer punishment for any misconduct of the pupil, which did not occur during school hours, or for

any misbehavior which did not take place in the school building or on the school yard."

The plaintiff made numerous assignments of error in his reasons of appeal, but all of them that were pursued in argument or brief were predicated upon the claim that "no rule can be adopted which attempts to control the conduct of pupils outside of school hours after they have reached their homes."

*J. Walter Scheffer* and *John B. Dillon,* for the appellant (plaintiff).

*Albert J. Merritt,* for the appellee (defendant).

KEELER, J. It is conceded in the brief of the appealing plaintiff that the school board or other proper authority may make reasonable rules concerning the conduct of pupils, and inflict reasonable corporal punishment for the infraction of such rules, and that in the absence of rules so established, the teacher may make all necessary and proper rules for the regulation of the school. We so held in *Sheehan* v. *Sturges,* 53 Conn. 481, 2 Atl. 841. The plaintiff further concedes that "the conduct of pupils outside of school hours and school property may be regulated by rules established by the school authorities if such conduct directly relates to and affects the management of the school and its efficiency." This we understand to be the rule abundantly established by authority. 5 Corpus Juris, p. 755. However, plaintiff proceeds to say that this conceded rule of law is qualified in this important particular: "But no rule can be adopted which attempts to control the conduct of pupils outside of school hours after they have reached their homes." Upon this last proposition plaintiff's appeal is entirely grounded. Counsel argue that the teacher stands *in*

*loco parentis* while a pupil is under his control and oversight in the schoolroom, but when by a return to his home he has again come under parental control, neither the teacher nor any other educational authority has any authority to follow him thither and to govern his conduct thereafter.

The authorities upon this point would not ordinarily be numerous, since it is a narrow one and restricted to transactions not usually forming the subject of litigation, and still less of consideration by appellate tribunals. In *Lander* v. *Seaver*, 32 Vt. 114, a teacher whipped a pupil, who, after he had returned home from school, passed with other boys the home of the teacher, and made remarks insulting to the latter. The punishment was inflicted the next day in school. The court held that while ordinarily the control of pupils and the right of a teacher to use disciplinary measures with them ceased after they had reached home, yet where the acts done have a direct and immediate tendency to injure the welfare of the school and its usefulness, punishment may be inflicted upon a pupil for acts done after school hours and after his return home. In *Hutton* v. *State*, 23 Tex. App. 386, 5 S. W. 122, defendant, a teacher, was convicted of assault and battery for whipping a pupil with a switch "about nine licks on the legs" for fighting after school hours in disobedience to a rule of the school. The court held that the fact that the fighting occurred after school hours did not deprive the teacher of his legal right to punish the pupil. In *Burdick* v. *Babcock*, 31 Iowa, 562, 567, the court says: "The view that acts, to be within the authority of the school board and teachers for discipline and correction, must be done within school hours, is narrow, and without regard to the spirit of the law and the best interest of our common schools. It is in conflict, too, with authority." In this

case the penalty inflicted was suspension by virtue of a rule to that effect.

We find no cases in point to the contrary of those cited above. There are many cases concerned with the power of school authorities to make and enforce rules forbidding activities and conduct outside of school hours and after the return of pupils to their homes, made punishable by expulsion or suspension, where the acts are likely to injuriously affect the proper operation and conduct of the school, and such rules have been upheld by the courts where adjudged to be reasonable. Citation is unnecessary; a full enumeration of the cases may be found in the note to *Kinzer* v. *Directors of Independent School District,* 6 Amer. & Eng. Anno. Cas. 998 (129 Iowa, 441, 105 N. W. 686). The two cases cited by plaintiff as particularly supporting his contention that the power of school authorities over the acts of pupils, ends when they have passed within the curtilage of the parental abode, are concerned respectively with prohibitions of joining Greek letter secret societies, and refusing to wear a khaki uniform. In Mechem on Public Officers, § 730, the law is summarized in accordance with the decided weight of authority as follows: "The authority of the teacher is not confined to the schoolroom or grounds, but he may prohibit and punish all acts of his pupils which are detrimental to the good order and best interests of the school, whether such acts are committed in school hours or while the pupil is on his way to or from school or after he has returned home."

Examination of the authorities clearly reveals the true test of the teacher's right and jurisdiction to punish for offenses not committed on the school property or going and returning therefrom, but after the return of the pupil to the parental abode, to be not

the time or place of the offense, but its effect upon the morale and efficiency of the school, whether it in fact is detrimental to its good order, and to the welfare and advancement of the pupils therein. If the conduct punished is detrimental to the best interests of the school, it is punishable, and in the instant case under the rules of the school board, by corporal infliction. The effect of the rule claimed by the plaintiff, if applied, would result in a serious loss of discipline in school, and possible harm to innocent pupils in attendance. Supposing that some strong-armed juvenile bully attending school lived upon the next block and sought for a brief moment the asylum of his home, and thence sallied forth and beat, abused and terrorized his fellow pupils as they passed by returning home, then, by the claim urged by plaintiff, he would be immune from punishment by the school authorities, while, if he began his assaults before he had passed within the bounds of his own front yard, he would be liable to proper punishment for any harm done. Now the harm done to the morale of the school is the same. The injured and frightened pupils are dismayed and discouraged in going to and coming from the school, and demoralized while in attendance. It will not do to say, as plaintiff's counsel argue, that the proper resort to correct such an abuse is to the parents of such offenders, or the public prosecutors. Some parents would dismiss the matter by saying that they could give no attention to children's quarrels; many would champion their children as being all right in their conduct. The public authorities would very properly say, unless the offense resulted in quite serious injury, that such affrays were too trifling to deserve their attention. Yet the harm to the school has been done, and its proper conduct and operation seriously harmed by such acts. Correction will usually be

sought in vain at the hands of parents; it can only be successfully applied by the teacher. It is not likely that any milder punishment than corporal infliction would act as a deterrent in cases like the present. The abuse of little girls by young bullies is a base and brutal offense.

In the instant case it will be observed that while the plaintiff had reached his home after school, his victims had not. This is an important fact, even if the rule claimed by plaintiff should be upheld as a general statement. See *Cleary* v. *Booth,* L. R. 1 Q. B. (1893) 465. The claim made in argument, that the small girls who were abused were trespassers upon the property of plaintiff's mother, is of no avail. There is nothing in the record to show that plaintiff was acting under direction of his mother, and even if he were, such conduct as the court has found to exist would not be lawful.

There is no error.

In this opinion the other judges concurred.